UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CAPITAL ONE, N.A., d/b/a
CAPITAL ONE AUTO FINANCE,

    Plaintiff,

v.                                              Civil Action No.

METRO FORD, INC.,

    Defendant.
_____/

## COMPLAINT

Plaintiff Capital One, N.A. d/b/a Capital One Auto Finance ("COAF"), by counsel, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, submits this Complaint against Metro Ford, Inc. ("Metro Ford" or the "Dealership"), and alleges as follows:

## INTRODUCTION

1. Per an Agreement between the Parties, Metro Ford sold to COAF "promissory notes, contracts, security agreements, guaranties, chattel documents, financing instruments and other documents acquired by [Metro Ford] as part of the financing of the purchase of the new and/or used motor vehicles . . . .[(collectively, the "Receivables")]."

2. As part of this process, Metro Ford sends documents and makes representations to COAF related to, among other things, the down payment made by the borrower/purchaser and the options and features of the subject motor vehicle so COAF can conduct an approval analysis on whether to agree to purchase the Receivables.

3. COAF brings this lawsuit because Metro Ford made misrepresentations related to the down payments made by the borrower for all four Receivables and misrepresented the options and features of the subject motor vehicle for one Receivable.

4.      As stated below, Metro Ford's actions raise claims for fraudulent misrepresentation, breach of contract, negligent misrepresentation, and breaches of representations and warranties.

## PARTIES

5.      Capital One, N.A. is a national bank with its main office, as set forth in its Articles of Association, located at 1680 Capital One Drive, McLean, Virginia.

6.      Metro Ford is a business incorporated under the laws of the State of Florida. Metro Ford is an automobile dealership located at 9000 NW 7th Avenue, Miami, Florida, 33150.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8.      Capital One, N.A. is a citizen of the Commonwealth of Virginia.

9.      Metro Ford is a citizen of the States of Florida and Delaware.

10.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This dispute involves damages in the amount of sixty-six thousand, seven hundred eighteen dollars and fifty-nine cents ($66,718.59). Also, COAF is entitled to recover its attorney's fees due to Metro Ford's fraudulent conduct and per a fee-shifting provision in the Dealer Agreement between COAF and Metro Ford. Last, Metro Ford's intentional, willful, and malicious actions justify an award of punitive damages.

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## BACKGROUND FACTS

### Agreement Between COAF And Metro Ford

12.     Metro Ford entered into a Dealer Agreement with Summit Acceptance Corporation ("Summit") on or around November 21, 2000 through which Metro Ford agrees to sell, and COAF

agrees to purchase, at its sole discretion, "promissory notes, contracts, security agreements, guaranties, chattel documents, financing instruments and other documents acquired by [Metro Ford] as part of the financing of the purchase of the new and/or used motor vehicles . . . [(collectively, the "Receivables")]."

13. COAF acquired Summit in 1998, and is Summit's successor and assign under the Dealer Agreement.

14. Since COAF acquired Summit, Metro Ford has continued to sell Receivables to COAF under the Dealer Agreement.

15. Through the Dealer Agreement, Metro Ford made several representations, warranties, and covenants regarding the Receivables they sold to COAF. These representations, warranties, and covenants include but are not limited to:

    a. that the descriptions of said new and/or used motor vehicle, or any services related thereto are in all respects true and complete;

    b. that the down payment made by the Debtor or Debtors have been made in cash unless otherwise specifically provided in writing in said Receivables;

    c. that the sale and related financing of the subject new and/or used motor vehicle and all matters related thereto comply in all material respects, and was consummated in strict compliance with all requirements of applicable federal, state, and local laws, and regulations thereunder, including, without limitations, usury laws, the uniform Consumer Credit Code, and other consumer credit laws and equal credit opportunity and disclosure laws.

16. The Dealer Agreement states that:

> At any time prior to the scheduled maturity of any receivable and upon notice and demand from COAF, the Dealer hereby agrees to repurchase from COAF any Receivable for which there has been a breach of one or more of the Dealer's representations and warranties as set forth in Paragraph 1 above. In the event that

Dealer is required to repurchase any Receivable pursuant to this Paragraph 3, the Dealer's repurchase price shall be equal to the total outstanding indebtedness then currently due under the terms of said Receivable.

**Metro Ford's Misrepresentations And Breaches Of Its Dealer Agreement With COAF**

17. COAF performed a review and audit of the Receivables it purchased from Metro Ford.

18. The investigation revealed at least three separate transactions and Receivables on which Metro Ford misrepresented material facts.

19. Metro Ford's misrepresentations give rise to its duty to repurchase those three Receivables.

20. These breaches and misrepresentations include, but are not limited to, the following:

   a. Down Payment Misrepresentation – Metro Ford violated the Dealer Agreement and negligently or intentionally misrepresented: (1) that borrowers made a cash down payment when part or all of the down payment was actually made by credit card; and (2) the amount of down payment made by a borrower. Metro Ford's misrepresentations manipulated the approval analysis that COAF performs to decide whether to purchase Receivables, and induced COAF into purchasing the Receivables;

   b. Power-booking Misrepresentation – Metro Ford violated the Dealer Agreement and negligently or intentionally misrepresented the options and features of a subject vehicle. Metro Ford's misrepresentation manipulated the approval analysis that COAF performs to decide whether to purchase Receivable, and induced COAF into purchasing the Receivable.

21. Metro Ford committed one or more of the aforementioned violations and misrepresentations in each of the three Receivables as discussed below.

22. Application ID 135136688 – Metro Ford misrepresented that the borrower made a $6,500 down payment in cash. The borrower, however, paid $3,000 of the down payment using his credit card.

23. Application ID 133608793 – Metro Ford misrepresented that the borrowers made a $6,000 down payment in cash. The borrowers, however, made an original $4,000 down payment when they purchased the vehicle, and then subsequently made another $3,000 down payment at the demand of Metro Ford.

24. Application ID 137672457 – Metro Ford misrepresented that the borrowers made a $700 down payment. The borrowers, however, made a $1,000 down payment. Metro Ford further misrepresented that the subject vehicle had a snow plow package and plow, and an All-Terrain package. The vehicle, however, does not have these options and features that Metro Ford claimed.

25. On or around January 23, 2018, COAF sent a written demand to Metro Ford to repurchase the three Receivables.

26. While Metro Ford exchanged subsequent communications with COAF, it has not agreed to the repurchase demand.

**Metro Ford's Failure To Reimburse COAF For Refunds/Credits**

27. Further, many of the Receivables sold by Metro Ford to COAF include warranty, service, or GAP contracts. These contracts were sold to the borrowers by Metro Ford, and were financed as part of the vehicle purchase. The contracts contain early termination provisions triggered on the expiration of the redemption period after the vehicle is repossessed or surrendered. In the event of early termination, the borrower is entitled to a pro rata refund of the contract purchase price from Metro Ford.

28.     For two Receivables with such contracts that terminated early, COAF refunded or credited the borrowers with the pro rata purchase price. COAF is entitled to recover the pro rata refund/credit from Metro Ford, because COAF had paid the purchase price of the financed contracts to Metro Ford when it purchased the Receivables from them, and because the Dealer is ultimately responsible for the refund/credit per the contract.

## COUNTS

### Count I: Fraudulent Misrepresentation
### (3 claims of Down Payment Misrepresentation)

29.     Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

30.     Metro Ford made misrepresentations related to the down payments made by the borrowers in the Receivables identified above.

31.     Metro Ford represented that the borrowers in the Receivables identified above made their entire down payments in cash, or represented the amounts of the down payments made by the borrowers.

32.     The representations were false because the borrowers either made part of their down payment by credit card and not cash, or because the down payments made by the borrowers was different than what Metro Ford represented.

33.     Metro Ford knew or should have known that these representations were false because it was a party to and present at the transaction, and because they actually received the down payment.

34.     Metro Ford made the misrepresentations to induce COAF into purchasing the Receivables.

35. COAF reasonably relied on Metro Ford's misrepresentations because the misrepresentations were not exaggerated or beyond belief and because Metro Ford made the misrepresentations or omissions in the regular course of business and dealings with COAF.

36. COAF was damaged by the misrepresentations because it was induced into purchasing Receivables it otherwise would not have purchased at all or would not have purchased them under the current terms.

37. COAF was further damaged because the risk profiles for the Receivables it purchased is higher than what Metro Ford represented them to be.

## Count II: Fraudulent Misrepresentation
### (1 claim of Power-booking)

38. Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

39. Metro Ford intentionally misrepresented the options and features on the motor vehicle in a Receivable identified above.

40. The representation was false because the motor vehicle in that Receivable does not have the claimed options and features.

41. Metro Ford knew or should have known the representation was false because it was a party to and present at the transaction, and because it had physical possession of the motor vehicle.

42. Metro Ford made the misrepresentation to induce COAF into purchasing the Receivable.

43. COAF reasonably relied on Metro Ford's misrepresentation or omission because the misrepresentation was not exaggerated or beyond belief and because Metro Ford made the misrepresentation in the regular course of business and dealings with COAF.

44. COAF was damaged by the misrepresentation because it was induced into purchasing a Receivable it otherwise would not have purchased at all or would not have purchased it under the current terms.

45. COAF was further damaged because the risk profile for the Receivable it purchased is higher than what Metro Ford represented it to be.

### Count III: Breach of Representation, Warranty, and Covenant
### (3 claims related to Down Payment)

46. Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

47. Metro Ford entered into a Dealer Agreement with Summit.

48. COAF acquired Summit and was its successor and assign under the Dealer Agreement.

49. In the Dealer Agreement, Metro Ford represented, warranted, and covenanted that the borrowers in Receivables identified above made all-cash down payments.

50. Metro Ford breached its representations, warranties, and covenants because those borrowers made all or part of their down payments by credit card.

51. In the Dealer Agreement, Metro Ford represented, warranted, and covenanted "that the sale and related financing of the subject new and/or used motor vehicle and all matters related thereto comply in all material respects, and was consummated in strict compliance with all requirements of applicable federal, state, and local laws, and regulations."

52. By misrepresenting that the borrowers in Receivables identified above made all-cash down payments, and by misrepresenting the amount of the down payment made by the borrowers in Receivables identified above, Metro Ford violated, among other laws, the Florida Deceptive and Unfair Trade Practices Act, the Federal Trade Commission Act and/or the Truth in

Lending Act and/or their implementing regulations, thereby breaching a representation, warranty, and covenant contained in the Dealer Agreement.

53. COAF was damaged by the breaches because it was induced into purchasing Receivables it otherwise would not have purchased at all, or would not have purchased them under the current terms.

54. COAF was further damaged because it did not receive the benefit of its bargain: the risk profiles for the Receivables it purchased are higher than what Metro Ford represented them to be.

55. Through the Dealer Agreement, Metro Ford agreed to pay for COAF's costs and attorney's fees "for any breach of any of the Dealer's representations, warranties, and covenants contained in this Agreement."

### Count IV: Breach of Representation, Warranty, and Covenant
(1 claim related to Power-booking)

56. Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

57. Metro Ford entered into a Dealer Agreement with Summit

58. COAF acquired Summit and became its successor and assign under the Dealer Agreement.

59. In the Dealer Agreement, Metro Ford represented, warranted, and covenanted that "the descriptions of said new and/or used motor vehicle, or any services related thereto are in all respects true and complete."

60. Metro Ford breached its representation, warranty, and covenant because the motor vehicle in a Receivable identified above did not have a snow plow or the All-Terrain package as claimed by Metro Ford.

61. In the Dealer Agreement, Metro Ford also represented, warranted, and covenanted "that the sale and related financing of the subject new and/or used motor vehicle and all matters related thereto comply in all material respects, and was consummated in strict compliance with all requirements of applicable federal, state, and local laws, and regulations."

62. By misrepresenting the options and features of the motor vehicle in the Receivable, Metro Ford violated, among other laws, the Florida Deceptive and Unfair Trade Practices Act, the Federal Trade Commission Act and/or the Truth in Lending Act and/or their implementing regulations, thereby breaching the representation, warranty, and covenant contained in the Dealer Agreement.

63. COAF was damaged by the breaches because it was induced into purchasing a Receivable it otherwise would not have purchased at all, or would not have purchased it under the current terms.

64. COAF was also damaged because it did not receive the benefit of its bargain: the risk profile for the Receivable it purchased is higher than what Metro Ford represented it to be.

65. Through the Dealer Agreement, Metro Ford agreed to pay for COAF's costs and attorney's fees "for any breach of any of the Dealer's representations, warranties, and covenants contained in this Agreement."

### Count V: Negligent Misrepresentation (brought in the alternative to Count I)
### (3 claims of Down Payment Misrepresentation)

66. Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

67. Metro Ford made misrepresentations related to the down payments made by the borrowers in Receivables identified above.

68. Metro Ford represented that the borrowers in the Receivables identified in above made their entire down payments in cash, or represented the amounts of the down payments made by the borrowers in Receivables identified above.

69. The representations were false because the borrowers either made part of their down payment by credit card and not cash, or because the down payments made by the borrowers was different than what Metro Ford represented.

70. Metro Ford's business relationship with COAF requires it to supply information to COAF.

71. That information is used to guide COAF in its business transactions with Metro Ford.

72. Metro Ford owed COAF a duty to communicate accurate information.

73. COAF reasonably relied on Metro Ford's misrepresentation because the misrepresentation was not exaggerated or beyond belief and because Metro Ford made the misrepresentation in the regular course of business and dealings with COAF.

74. COAF was damaged by the misrepresentations because COAF was induced into purchasing Receivables it otherwise would not have purchased at all or would not have purchased them under the current terms.

75. COAF was further damaged because the risk profiles for the Receivables it purchased are higher than what Metro Ford represented them to be.

**Count VI: Negligent Misrepresentation (brought in the alternative to Count II)**
**(1claims of Power-booking Misrepresentation)**

76. Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

77. Metro Ford misrepresented the options and features on the motor vehicle in a Receivable identified above.

78. The representation was false because the motor vehicle in that Receivable does not have the claimed options and features.

79. Metro Ford's business relationship with Capital One requires it to supply information to Capital One.

80. That information is used to guide Capital One in its business transactions with Metro Ford.

81. Metro Ford owed COAF a duty to communicate accurate information.

82. COAF reasonably relied on Metro Ford's misrepresentation because the misrepresentation was not exaggerated or beyond belief and because Metro Ford made the misrepresentation in the regular course of business and dealings with COAF.

83. COAF was damaged by the misrepresentation because it was induced into purchasing a Receivable it otherwise would not have purchased at all or would not have purchased it under the current terms.

84. COAF was further damaged because the risk profile for the Receivable it purchased is higher than what Metro Ford represented it to be.

**Count VII: Breach of Contract**
**(3 claims related to Down Payment)**

85. Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

86. Metro Ford entered into a Dealer Agreement with Summit.

87. COAF acquired Summit and was its successor and assign under the Dealer Agreement.

88. In the Dealer Agreement, Metro Ford represented, warranted, and covenanted that the borrowers in Receivables identified above made all-cash down payments.

89. Metro Ford breached its representations, warranties, and covenants because those borrowers made all or part of their down payments by credit card.

90. In the Dealer Agreement, Metro Ford represented, warranted, and covenanted "that the sale and related financing of the subject new and/or used motor vehicle and all matters related thereto comply in all material respects, and was consummated in strict compliance with all requirements of applicable federal, state, and local laws, and regulations."

91. By misrepresenting that the borrowers in Receivables identified above made all-cash down payments, and by misrepresenting the amount of the down payment made by borrowers in Receivables identified above, Metro Ford violated, among other laws, the Florida Deceptive and Unfair Trade Practices Act, the Federal Trade Commission Act and/or the Truth in Lending Act and/or their implementing regulations, thereby breaching a representation, warranty, and covenant contained in the Dealer Agreement..

92. The Dealer Agreement further states:

At any time prior to the scheduled maturity of any receivable and upon notice and demand from COAF, the Dealer hereby agrees to repurchase from COAF any Receivable for which there has been a breach of one or more of the Dealer's representations and warranties as set forth in Paragraph 1 above. In the event that Dealer is required to repurchase any Receivable pursuant to this Paragraph 3, the Dealer's repurchase price shall be equal to the total outstanding indebtedness then currently due under the terms of said Receivable.

93. COAF demanded that Metro Ford repurchase the Receivables at issue in this case, but Metro Ford has failed to do so despite their obligation under the Dealer Agreement.

94. COAF was damaged by the breaches because it was induced into purchasing Receivables it otherwise would not have purchased at all or would not have purchased them under

the current terms.

95. COAF was damaged by Metro Ford's failure to repurchase the Receivables in an amount equal to the total outstanding indebtedness then currently due under the terms of said Receivables.

96. Through the Dealer Agreement, Metro Ford agreed to pay for COAF's costs and attorney's fees "for any breach of any of the Dealer's representations, warranties, and covenants contained in this Agreement."

### Count VIII: Breach of Contract
### (1 claim related to Power-booking)

97. Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

98. Metro Ford entered into a Dealer Agreement with COAF.

99. In the Dealer Agreement, Metro Ford represented, warranted, and covenanted that "the descriptions of said new and/or used motor vehicle, or any services related thereto are in all respects true and complete."

100. Metro Ford breached its representation, warranty, and covenant because the motor vehicle in a Receivable identified above did not have a snow plow or the All-Terrain package as claimed by Metro Ford.

101. In the Dealer Agreement, Metro Ford also represented, warranted, and covenanted "that the sale and related financing of the subject new and/or used motor vehicle and all matters related thereto comply in all material respects, and was consummated in strict compliance with all requirements of applicable federal, state, and local laws, and regulations."

102. By misrepresenting the options and features of the motor vehicle in a Receivable identified above, Metro Ford violated, among other laws, the Florida Deceptive and Unfair Trade

Practices Act, the Federal Trade Commission Act and/or the Truth in Lending Act and/or their implementing regulations, thereby breaching the representation, warranty, and covenant contained in the Dealer Agreement.

103. The Dealer Agreement further states:

At any time prior to the scheduled maturity of any receivable and upon notice and demand from COAF, the Dealer hereby agrees to repurchase from COAF any Receivable for which there has been a breach of one or more of the Dealer's representations and warranties as set forth in Paragraph 1 above. In the event that Dealer is required to repurchase any Receivable pursuant to this Paragraph 3, the Dealer's repurchase price shall be equal to the total outstanding indebtedness then currently due under the terms of said Receivable.

104. COAF demanded that Metro Ford repurchase the Receivables at issue in this case, but Metro Ford has failed to do so despite their obligation under the Dealer Agreement.

105. COAF was damaged by the breach because it was induced into purchasing a Receivable it otherwise would not have purchased at all or would not have purchased it under the current terms.

106. COAF was damaged by Metro Ford's failure to repurchase the Receivable in an amount equal to the total outstanding indebtedness then currently due under the terms of said Receivable.

107. Through the Dealer Agreement, Metro Ford agreed to pay for COAF's costs and attorney's fees "for any breach of any of the Dealer's representations, warranties, and covenants contained in this Agreement."

### Count IX: Unjust Enrichment

108. Paragraphs 1-28 are incorporated into this Count by reference as if fully stated herein.

109. Metro Ford sold two receivables to COAF that included warranty, service, or GAP contracts.

110. Both contracts were sold to the borrowers by Metro Ford, and were financed as part of the vehicle purchase.

111. COAF conferred a benefit on Metro Ford when it paid the full purchase price of the two financed contracts to Metro Ford through its purchase of the Receivables from them.

112. Metro Ford accepted and retained the payment from COAF.

113. The two contracts contain early termination provisions triggered on the expiration of the redemption period after the vehicle is repossessed or surrendered.

114. In the event of early termination, the borrower is entitled to a pro rata refund of the contract purchase price from Metro Ford.

115. The early termination provision was triggered for both contracts.

116. COAF refunded or credited the borrowers with the pro rata purchase price of $1,059.62 for Loan No. – XXXX7112, and $1,845.06 for Loan No. XXXX6865.

117. Under the circumstances where COAF paid Metro Ford for the full purchase price of the contracts, and then refunded/credited the borrowers per the early termination clause, it is inequitable for Metro Ford to retain the full purchase price of the contracts.

## **PRAYER FOR RELIEF**

**WHEREFORE**, COAF respectfully requests that the Court:

1. Find Metro Ford liable for each of the separate, individual claims identified Counts I-IX and enter judgment in favor of COAF on those Counts;

2. Award COAF the full amount of its compensatory and consequential damages, in an amount to be determined at trial but in no event less than sixty-six thousand, seven hundred eighteen dollars and fifty-nine cents ($66,718.59);

3. Award COAF punitive damages for Metro Ford's intentional, willful, and malicious conduct;

4. Award COAF reasonable attorney's fees, interest and costs;

5. Award COAF specific performance on the Dealer Agreement and order Metro Ford to repurchase the Receivables at issue in this case in accordance with the terms of the Dealer Agreement; and

6. Any other and further amount this Court deems just and proper.

## JURY DEMAND

COAF demands a trial by jury.

Dated: June 14, 2018

Respectfully Submitted,

*/s/ Emily Y. Rottmann*
Sara F. Holladay-Tobias
FL Bar No.: 0026225
Emily Y. Rottmann
FL Bar No.: 0093154
C. H. Houston III
FL Bar No.: 0100268
**MCGUIREWOODS LLP**
50 N. Laura St., Ste. 3300
Jacksonville, FL 32202
Tel: (904) 798-3200
Fax: (904) 798-3207
stobias@mcguirewoods.com
flservice@mcguirewoods.com
erottmann@mcguirewoods.com
clambert@mcguirewoods.com
hhouston@mcguirewoods.com

and

Phillip C. Chang
(*Pro Hac Vice* forthcoming)
**MCGUIREWOODS LLP**
2001 K Street N.W.
Suite 400
Washington, DC 20006-1040
Tel: (202) 857-1725
Fax: (202) 828-2995
pchang@mcguirewoods.com

*Attorneys and Trial Counsel for Plaintiff Capital One, N.A.*